# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 27, 2006 Session

## IN RE: ESTATE OF MARY A. GRASS

**Appeal from the Seventh Circuit Court for Davidson County**
**No. 02P-1998      David Randall Kennedy, Judge**

**No. M2005-00641-COA-R3-CV - Filed: June 4, 2008**

This appeal involves the probate of a will.  On appeal, the appellant claims that the Probate Court did not have jurisdiction to extend the statute of limitations to elect against the will and that the Agreed Order extending the statute of limitations was not effective.  The appellant also claims that the surviving spouse cannot elect against the will because he waived his right to elect by signing a waiver and accepting the benefits of the bequests to him under the will.  Finally, the appellant claims that the Probate Court erred in calculating the award of exempt property, year's support, homestead exemption, and elective share.  Finding that the Probate Court did not err in extending the statute of limitations, that the surviving spouse did not waive his right to elect against the will and that the Probate Court correctly awarded the homestead exemption, but finding that the Probate Court erred in calculating the award of exempt property, year's support, and the surviving spouse's elective share, we affirm in part, reverse in part and remand to the Probate Court to make recalculations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in part and Reversed in part.**

JERRY SCOTT, SR. J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., joined. WILLIAM BRYAN CAIN, J., not participating.

Thomas I. Bottorff, Brentwood, Tennessee, for the appellant, James E. McLendon

Paul A. Gontarek, Nashville, Tennessee, for the appellee, Raymond G. Grass

## OPINION

### Facts

Mary Anne Grass (the "Decedent") married Raymond G. Grass (the "Husband") on April 16, 1975.  They were married for over 27 years, until the Decedent's death on October 31, 2002, at 82 years of age.  The Decedent had two adult children from a prior marriage, James McLendon of Nashville, Tennessee and Lilly Diane McLendon of St. John, Newfoundland, Canada.  Ms. Grass executed her Last Will and Testament (the "Will") on

May 20 or 21, 2002, by which she appointed her son, James McLendon as Executor (the "Executor").[1]

Before the Decedent married her Husband in 1975 and until her death, the Decedent owned a house in her name alone at 140 Tusculum Road in Antioch, Tennessee. The house is located on nine acres and consists of four apartments. Three of the apartments in the house were rental apartments, and the fourth apartment was used by the Decedent and her Husband as their residence. Each apartment was fully furnished. The house and land were valued on the Tennessee Inheritance Tax Return at $292,100. The household furnishings were valued at $25,000.

In her will, the Decedent devised the property at 140 Tusculum Road to her son, James Earl McClendon. Two acres of the property is subject to a life estate for her daughter, Lilly Diane McLendon to "raise plants," and the area for her to raise plants can be increased to five acres. Her husband, Raymond G. Grass was authorized to continue to use the home as long "as he can maintain it and would require it as his principal place of residence." By the terms of the will, the income from the three apartments will continue to pay for all upkeep, maintenance, taxes, insurance and rental expenses with the reminder to be retirement income for her husband.

The Decedent also devised two townhouses to her daughter and two townhouses to her husband on McLendon Drive in Antioch. Finally, she bequeathed her interest in their depository accounts, certificates of deposit, motor home and any automobiles and/or trucks to her Husband, which they purchased jointly. The residue was to be divided equally between her Husband and her two children.

The value of the two, two-unit rental townhouses on McLendon Court was reported as $200,000 on the Tennessee Inheritance Tax Return. The Decedent and her husband owned a 1.16 acre unimproved lot on Bart Drive in Antioch valued by the Davidson County Assessor of Property at $5,800. The deed is not in the record. The tax notices were sent to her son, the Executor, at his home address.

The Decedent owned a 1992 Ford Taurus automobile and her Husband owned a truck. The motor home was valued on the Tennessee Inheritance Tax Return at $18,000. They also owned a substantial amount of lawn equipment, which was valued on the Tennessee Inheritance Tax Return at $8,000.

Before the Decedent died, she and her Husband had a joint bank account with a balance of $260,000. The Decedent withdrew $160,000 from the account and placed the money in two pay on death accounts payable to her children, James and Dianne McLendon. The Husband withdrew $100,000 from the account and gave the money to his children from his prior marriage.

---

[1] The printed text of the will recites its date as May 20, 2002 in two places, but Ms. Grass wrote May 21, 2002 as the date of her will.

After the Decedent's death, her Husband signed a form giving his consent for James McLendon to be appointed Executor without bond and waived the statutory requirement of the Executor filing an Inventory or Accounting with the Clerk.[2] On December 4, 2002, the Executor filed his sworn Petition to Probate the Decedent's Will and to be appointed Executor without bond.

On April 24, 2003, the Decedent's Husband signed a document entitled "Receipt and Waiver" for the Executor. It is not known who prepared the document. The document states:

> I, RAYMOND G. GRASS, a residuary beneficiary of this estate, pursuant to Tennessee Code Annotated, section 30-2-601, do hereby acknowledge and state to this Court that I am a distributee of this estate pursuant to the duly probated Will of the decedent, and that I waive any and all requirements that the personal representative make any accounting to the Court in this cause. I further acknowledge and state to the Court that I have now received all funds and assets bequeathed to me in the Last Will and Testament of the decedent, and I hereby acknowledge receipt of same. Finally, I hereby release the personal representative of this Estate from any and all further liability and/or responsibility as personal representative thereof, both now, and in the future.

When the document was signed, the Husband was not represented by an attorney. Two days before the Husband delivered the "Receipt and Waiver" to the Executor, the Executor signed an "Executor's Deed," which stated that title to the property located at 140 Tusculum Road was transferred by the deed and conveyed by the Executor to himself personally pursuant to the provisions set forth in the Will, including a life estate for Raymond G. Grass "as long as he can maintain it and would require it as his usual place of residence" and quotes the language of the will as to the use of the rental income for its maintenance with the remainder payable to the Husband. The Executor's Deed was recorded on April 24, 2003, the same day that the Husband signed the Receipt and Waiver.

On July 30, 2003, counsel for the Executor and counsel for the Decedent's Husband prepared, signed and submitted an Agreed Order to the Probate Court extending the time period for the Husband to petition for his elective share, year's support, exempt property and homestead an additional 60 days beyond the nine months statutory period. In the decretal paragraph, the Agreed Order gave the Husband until October 31, 2003, to file a petition for his elective share, year's support, exempt property and homestead. The Order was filed on July 30, 2003.

On October 31, 2003, with the assistance of the attorney who signed the Agreed Order for him, the Husband filed his petition for his elective share, year's support, exempt property and homestead (the "Petition for Elective Share") with the Clerk of the Probate Court.

---

[2] The will excused the posting of a bond and the filing of an inventory, but did not excuse the filing of an accounting.

3

Over the next year, the Executor filed his status reports with the Clerk of the Probate Court, responded in writing to the Husband's motion to strike his status report and the Husband's exception to his detailed annual accounting, opposed his counsel's motion to withdraw, which was granted by the Probate Court, served through his new counsel two sets of interrogatories on the Husband, and continued to participate in the litigation against the Husband. In an Order filed July 15, 2004, the Probate Court found that the Release and Waiver did not prevent the Husband from proceeding with his petition for his elective share, year's support, exempt property and homestead.

On October 19, 2004, the Probate Court entered an Order on Petition for Elective Share, Year's Support, Exempt Property, and Homestead, granting the Husband's petition.

On October 29, 2004, the Husband filed a Petition to Compel Sale of Real Property to satisfy the award of the elective share, homestead, exempt property and year's support. Also, on that same day, the Husband filed a Motion to Alter or Amend the Order on Petition for Elective Share, Year's Support, Exempt Property and Homestead.

On November 9, 2004, the Executor filed his Response to Petition to Compel Sale of Real Estate and a Response to the Motion to Alter or Amend Order on Petition for Elective Share, Year's Support, Exempt Property, and Homestead. On that same day, the Executor also filed a Motion for Interlocutory Appeal supported by a Memorandum of Law in Support of Motion for Interlocutory Appeal.

On November 17, 2004, the Executor filed a Motion to Make Additional Findings and to Alter or Amend Order that was entered on October 19, 2004. On November 18, 2004, the Executor filed, with the assistance of new counsel, his Second Motion to Make Additional Findings and to Alter or Amend Order entered October 19, 2004. On November 19, 2004, the Probate Court ordered the preparation of a transcript of the October 19, 2004 hearing. The court reporter was given until 5:00 p.m. on November 22, 2004 to transcribe the testimony at the hearing.

On November 23, 2004, the Executor filed his Amended Answer of James E. McClendon, as Executor and Individually, to Petition to Compel Sale of Real Estate. That same day, the Probate Court entered a Scheduling Order granting the Deceased's daughter, Diane McClendon, leave to file an Answer or Amended Answer by November 29, 2004, setting a deadline for the completion of written discovery and revelation of any of the expert witnesses to be called by each side, and setting January 20, 2005, as the trial date. That Order was submitted jointly by the Executor's former counsel and his newly employed counsel.

On January 4, 2005, the Executor's former counsel was relieved and the new counsel continued to represent him. On January 5, 2005, the Husband's counsel filed his Response to Executor's Motions to Make Additional Findings and to Alter or Amend and also responded to the Executor's motion for an interlocutory appeal.

On February 4, 2005, the Probate Court heard the Motion to Compel the Sale of Real Property and the various Motions to Alter or Amend the Order on Petition for Elective Share.

4

The Probate Court took the matters under advisement. On February 15, 2005, the Probate Court entered an Order directing the Executor to sell the real property at 140 Tusculum Road to satisfy the Husband's award of elective share. On March 4, 2005, the Probate Court entered an Amended Order on Petition for Elective Share, Year's Support, Exempt Property, and Homestead from all of which the Executor appeals, and the Husband filed his cross-appeal. Even after the Notice of Appeal was filed, the Executor filed a pro se 49 page Motion to Alter or Amend the judgment. The Probate Court overruled the motion due to lack of jurisdiction at that point.

## Standard of Review

The standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); Rawlings v. John Hancock Mut. Life Ins. Co., 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's findings of fact, it must support another finding of fact with greater convincing effect. Walker v. Sidney Gilreath & Assocs., 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); The Realty Shop, Inc. v. R.R. Westminster Holding, Inc., 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we must conduct our own independent review of the record to determine where the preponderance of the evidence lies. Brooks v. Brooks, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. Estate of Walton v. Young, 950 S.W.2d 956, 959 (Tenn. 1997); B & G Constr., Inc. v. Polk, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. Nelson v. Wal-Mart Stores, Inc., 8 S.W.3d 625, 628 (Tenn. 1999).

## Issues

The five issues and their sub-issues raised on appeal by the Executor as Appellant are as follows:

A. Whether the time limit prescribed in Tennessee Code Annotated section 31-4-102(a) for filing a petition for elective share, exempt property, year's support and homestead is subject-matter jurisdictional to the trial court; and, whether an Agreed Order signed and entered by the trial court on July 30, 2003, was effective to extend the time for the Husband to file his Petition beyond the July 31, 2003, deadline in this case; and, thus whether the trial court had subject-matter jurisdiction of the Husband's Petition for Elective Share, Exempt Property, Year's Support, and Homestead which he filed on October 31, 2003.

B. Whether the trial court erred in overruling the Executor's objection to allowing the Husband to go forward with his Petition for Elective Share on the grounds the Husband had accepted the benefits of the bequest to him in the Will, and pursuant to Tennessee Code Annotated section 30-2-707, the Husband had signed and delivered to the Executor a Receipt and Waiver acknowledging receipt of the benefits accorded him in the Will

5

and releasing the estate from any further liability to him; and, in reliance thereon, the Executor's attorney prepared and the Executor executed and recorded in the Register's Office for Davidson County, Tennessee an Executor's Deed setting forth the interests of the Husband and the other beneficiaries in the Decedent's real property located at 140 Tusculum Road, Antioch, Tennessee as devised to them under the Will.

C. In regard to the Order on Elective Share and Amended Order on Elective Share awarding the Husband:

1. Exempt Property. Whether the trial court erred in awarding as exempt property, to be paid or set aside from the decedent's estate under Tennessee Code Annotated section 30-2-101(a), an amount which included, contrary to subsection (1) thereof, the value of tangible personal property, consisting of household furnishings and law equipment, that was used primarily in the decedent's trade or business, or was for investment purposes, or alternatively, was owned jointly by the Decedent and the Husband; and which included, contrary to subsection (2) thereof, the value of a motor home that was titled in the joint names of the Decedent and the Husband; all of which also effects the calculations of the Elective-Share amount under Tennessee Code Annotated section 31-4-101(b) and (c).

2. Year's Support. Whether the trial court erred in awarding a year's support under Tennessee Code Annotated section 30-2-102(a), which (i) included the decedent's Social Security benefits; (ii) did not take into account the gross rental income from the three rental apartments in the real property located at 140 Tusculum Road, Antioch, Tennessee, which the Husband received pursuant to the terms of the Will, both before and after filing his Petition for Elective Share; (iii) did not take into account the value of the Husband's occupancy of the fourth apartment in the real property located at 140 Tusculum Road, Antioch, Tennessee as bequeathed to him pursuant to the terms of the Will; (iv) did not take into account the substantial amount of assets the decedent owned jointly with the Husband and which passed to the Husband outside of probate, including but not limited to four rental townhouses the parties owned on McLendon Drive in Antioch, Tennessee; (v) did not take into account the rental income from the four townhouses located on McLendon Drive, Antioch, Tennessee; (vi) apparently did not take into account the small amount of money in the estate and the fact that as a matter of law the year's support cannot be satisfied out of the decedent's real property; (vii) did not take into account the totality of the circumstance; and, (viii) erroneously offset the year's support award with the award of the exempt property, even though that erroneous calculation resulted in no monetary award of year's support, which favors the Executor, and all of which adversely

6

affects the calculations in the Elective share amount awarded under Tennessee Code Annotated section 31-4-101(b) and (c);

3. Homestead.   Whether the Husband is entitled to an award for homestead in view of the fact he has elected against the provisions made for him in the Will and has therefor rejected the right to continue to reside in the real property owned in the Decedent's name alone.

4. Elective Share.

(a) Whether in calculating the value of the net estate under Tennessee Code Annotated section 31-4-101(b) the trial court erred in including, as a fraudulent conveyance in violation of Tennessee Code Annotated section 31-1-105, a $160,000 amount the Decedent had transferred to two pay-on-death accounts with her two adult children, which in actuality divided a $260,000 amount on approximately a 60% - 40% basis, the same amount the Husband would have received under the elective share statute if the Court had fully considered the source from which the money came as required by In Re:  The Estate of Oleta Gray, deceased, 729 S.W.2d 668, and in view of the fact that the Husband accepted, ratified and confirmed said division when he took the remaining $100,000 of said funds and gave it to his children.

(b) Whether the trial court erred in including in the value of the net estate, as defined in Tennessee Code Annotated section 31-4-101(b), property that was jointly owned by the decedent and the Husband, and which passed to the Husband outside of probate, thereby erroneously inflating the value of the net estate and the 40% product thereof, based on the more than nine year marriage of the parties under Tennessee Code Annotated section 31-4-101(a), when the language of the statute clearly state the nets estate includes only property subject to disposition under the provisions of the Decedent's will, i.e., assets owned in the Decedent's name alone.

(c) Whether the trial court erred in not deducting from the net estate, contrary to Tennessee Code Annotated section 31-4-101(a), all assets includable in the Decedent's gross estate, which were transferred, or deemed transferred, to the surviving spouse or which were for the benefit of the surviving spouse, in the same manner as determined for inheritance tax purposes pursuant to Tennessee code Annotated section 67-8-301 et seq.; and, due to the Husband's failure to actuarially determine the value of the Husband's occupancy of the real property, deducting the value thereof.

(d) Whether the trial court erred in failing to credit against the awards in the Amended Order on Elective Share the amount the Husband received from the rents on the apartments and townhouses, the

7

proceeds from the "garage sale" of the household furniture and furnishing conducted by the Husband over the objections of the Executor, and the costs to the estate of the real property taxes, insurance, maintenance and upkeep of the real property, which charged the Husband in the Will.

D. In regard to the Order to Sell Real Property, whether the trial court erred in ordering the Decedent's real property sold to satisfy the awards of the elective share, exempt property and homestead:

1. When the awards of elective share, exempt property, year's support and homestead were made even though the Husband had not complied with Rule 39 of the Local rules of Practice for Courts of Record, Twentieth Judicial District of Tennessee, regarding Special Procedures for Probate Matters, which requires the Husband to have accomplished service of his Petition pursuant to Rules 3 and 4 of the Tennessee Rules of Civil Procedure, on all interested parties, which the Husband failed to do; and

2. When the Husband failed to implead all heirs, devises, encumbrances, and others interested in the realty as required by Tennessee Code Annotated section 30-2-402(b)(1); and

3. When Dianne McLendon, a non-resident beneficiary of the estate, was not made a party and served with process by the Husband, and, pursuant to Tennessee Code Annotated section 30-2-203(b), such failure to give her the required notice of the original application for homestead results in Dianne McLendon having a period of three years from the date of the original application to file for a rehearing of the cause; and

4. When the Order on Elective Share, entered on October 19, 2004, had not "become final," due to the fact the said Order was the subject of cross Motions to alter or amend filed by both of the parties and had not been heard by the Court and the Order did not order the distribution and/or vesting of the elective share to the surviving spouse as required by Tennessee Code Annotated section 31-4-102(d); all of which affects title to the real property and renders it unmarketable.

E. Whether the Husband has carried the burden to prove his claims and, thus, whether the evidence preponderates against the findings of the trial court.

The Husband as Appellee/Cross Appellant raised seven issues as follows:

A. Whether the Probate Court properly exercised its general, original and exclusive jurisdiction over the administration of the estate of the Decedent in ruling on Mr. Grass' Petition for Elective Share.

8

B. Whether the Executor can carry his burden of proof on appeal concerning the Probate Court's hearing and resulting ruling on the "Receipt and Waiver," in light of the fact that the Executor failed to fine a transcript of the proceedings.

C. Whether the Probate Court's award of exempt property to Mr. Grass is supported by the factual record.

D. Whether the Probate Court erred in failing to award to Mr. Grass year's support When it: (1) relied on bank accounts held by the Decedent and Dianne McLendon to reduce the award of year's support when no evidence or testimony pertaining to those bank accounts was presented at trial; and (2) erroneously credited the award of exempt property against the award of year's support.

E. Whether the Probate court's award of a homestead exemption to Mr. Grass is supported by the factual record.

F. Whether the Probate Court erred in its calculation of both the net estate and gross estate for purposes of the elective share award thereby causing the award of the elective share to Mr. Grass to be incorrect as a matter of law.

G. Whether the Probate Court erred in ordering the Executor to sell real property to satisfy the awards of elective share, exempt property and homestead.

**Analysis**

I. **The first issue is whether the Probate Court had jurisdiction to extend the time limit prescribed in Tennessee Code Annotated section 31-4-102(a), and whether an Agreed Order signed by both parties and entered by the Probate Court was effective to extend the time for the Husband to file his petition for elective share, exempt property, year's support, and homestead, and thus, retain subject matter jurisdiction of the issues covered by the order.**

In addressing this issue, the statute of limitations for a surviving spouse to elect against a will is set forth at Tennessee Code Annotated section 31-4-102(a)(1) and incorporated by Tennessee Code Annotated section 30-2-101(d) for exempt property, Tennessee Code Annotated section 30-2-102(g) for year's support allowance, and Tennessee Code Annotated section 30-2-204(b) for homestead.

Tennessee Code Annotated section 31-4-102 provides:

(a)(1) The surviving spouse may elect to take such spouse's elective share in decedent's property by filing in the Court and mailing or delivering to the personal representative, if any, a petition for the elective share within nine (9) months after the date of death, or within six (6) months after the appointment of the personal representative, whichever limitation last expires.

9

(2) When the title of the surviving spouse to property devised or bequeathed by the will is involved in litigation pending so that an election to take the elective share cannot be advisedly made, the survivor shall have an additional year from the date of the probate of the will within which to elect; provided, that the court may upon a proper showing further extend the time to meet the exigency of litigation, no concluded, and, that application for allowance of additional time, in either case, be made to the court, for record of its action thereon.

In this case, the Decedent, Mary Anne Grass, died on October 31, 2002. Nine months from the date of her death was July 31, 2003. The Executor was appointed on December 4, 2002. Six months after the appointment of the Executor was June 4, 2003. Therefore, pursuant to Tennessee Code Annotated section 31-4-102(a)(1), the last day to petition for the spouse's elective share, exempt property, year's support and homestead was on July 31, 2003.

On July 30, 2003, the Executor represented to both the Decedent's Husband and the Probate Court, as evidenced by the signature of counsel on the Agreed Order, that he agreed to extend the statute of limitations for the Decedent's Husband to file his Petition for Elective Share for an additional 60 days and the Probate Court extended the time to October 31, 2003.[3]

Now the Executor comes to this Court and pleads the statute of limitations claiming that the Probate Court did not have subject-matter jurisdiction to extend the statute of limitations, and therefore, the Agreed Order was ineffective to extend the time for the Decedent's Husband to file his petition. Nowhere in the pleadings or the proof was there any issue raised in the Probate Court challenging the jurisdiction of the trial court to extend the statute of limitations by agreement. The Executor now contends that unless there was litigation pending the Probate Court had no jurisdiction to enter the Agreed Order.

The Executor relies on Ferris v. Fort, 2 Tenn. Ch. 147, 150 (1874), wherein the Chancellor held that the widow's formal dissent from the will must be made in open court within the time limit. The Court acknowledged that "a widow may assert her rights as though she had dissented in time, if she has been prevented from dissenting, within the limited time, by fraud" or "if the personal representative refuse to disclose to her, upon her application, the condition of her husband's estate within said period," or "where there is no personal representative to give her information." Id. The Court went on to note that the assertion of such right "was reserved exclusively to a court of equity" and the county court had "no such jurisdiction." Id.

Pursuant to Tennessee Code Annotated section 16-2-506(20)(A), the judge of Division VII of the Davidson County Circuit Court, in addition to the jurisdiction of a Circuit Court judge, "shall have concurrent chancery court jurisdiction and exclusive jurisdiction

_____

[3] While the Agreed Order provided for an extension of 60 days, which would have been until September 30, 2005, the decretal portion of the Probate Court's order set October 31, 2003 as the final date to file, making that the last day to file regardless of the sixty days recited earlier in the Agreed Order.

10

over the probate of wills and the administration of estates, including the estates of dependents and of wards under guardianships and conservatorships." Stated differently, that section of the Code vests Division VII with probate jurisdiction and the entire jurisdiction of the Chancery Court of Davidson County. Therefore, Division VII clearly has subject matter jurisdiction over wills and estates, including the will in this case.

Having all the powers of a Chancery Court, the Probate Court can utilize equitable remedies such as "equitable estoppel." The doctrine of "equitable estoppel" "tolls the running of the statute of limitations where the defendant has 'misled the plaintiff into failing to file [his] action within the statutory period of limitations.'" Fahrner v. S.W. Mfg., Inc., 48 S.W.3d 141, 145 (Tenn. 2001) quoting Norton v. Everhart, 895 S.W.2d 317, 321 (Tenn. 1995). "A clear example, and the one most prominent in the case law, is a defendant's promise not to plead the statute of limitations, which he breaks once the plaintiff has waited for the statute to expire before filing his complaint." Fahrner, 48 S.W.3d at 145. See also American Mutual Liab. Ins. Co. v. Baxter, 210 Tenn. 242, 247-48, 357 S.W.2d 825, 827 (1962); Bernard v. Houston Ezell Corp., 968 S.W.2d 855, 862 (Tenn. Ct. App. 1997); Sparks v. Metro. Gov. of Nashville, 771 S.W.2d 430, 433 (Tenn. Ct. App. 1989).

The Executor, through his counsel, represented to the Decedent's Husband, his counsel and to the Probate Court, as evidenced by the signatures of counsel on the Agreed Order, that he agreed to extend the statute of limitations to October 31, 2003 for the Decedent's Husband to file his Petition for Elective Share.[4] Now, the Executor pleads the statute of limitations claiming that the Probate Court lacked subject-matter jurisdiction to extend the statute of limitations and that the Agreed Order was not effective to extend the time for the Decedent's Husband to file his petition. In essence, the Executor is claiming that the original limitations period should apply even though he agreed to extend it.

Pursuant to Tennessee Code Annotated section 16-2-506(20)(A), the Probate Court clearly had jurisdiction over this matter. Furthermore, this case is a clear example of when "equitable estoppel" should apply. Therefore, we hold that the Executor is equitably estopped from raising the bar of the statute of limitations on appeal because he agreed to extend the limitation period to October 31, 2003, and the Decedent's Husband filed his petition on October 31, 2003. Furthermore, the statute of limitations is an affirmative defense and must be specifically pleaded in the trial court. Rule 8.03 Tenn. R. Civ. P.; George v. Building Materials Corp. of America, 44 S.W.3d 481, 486 (Tenn. 2001). That was never done in this case, even though the litigation continued on for years after the Agreed Order was entered by the Probate Court.

II. **Whether the trial court erred in allowing the Husband to go forward with his Petition for Elective Share when the Husband had accepted the benefits of the bequest to him under the will and signed and delivered to the Executor a document titled "Receipt and Waiver" acknowledging receipt of the benefits**

---

[4] The Executor's counsel's signature was placed on the Agreed Order by the Husband's counsel "with permission," a common practice among attorneys accepted by courts everywhere. No issue was raised about the signature of the Executor's counsel being affixed by the opposing counsel.

**accorded him in the will and releasing the estate from any further liability to him.**

In essence, the Executor claims that the Decedent's Husband waived his right to his elective share of the estate by signing the "Receipt and Waiver" and accepting the benefits of the bequest to him under the will.

"Waiver is a voluntary relinquishment or abandonment of a known right or privilege." Faught v. Estate of Faught, 730 S.W.2d 323, 325-26 (Tenn. 1987) (citing Chattem, Inc. v. Provident Life & Accident Insurance Co., 626 S.W.2d 953, 955 (Tenn. 1984); Felts v. Tennessee Consolidated Retirement System, 650 S.W.2d 371, 375 (Tenn. 1983)). "Thus, when an individual does not know of his rights or when he fails to fully understand them, there can be no effective waiver of those rights." Faught v. Estate of Faught, 730 S.W.2d at 326.

The Executor of the estate occupied a fiduciary role in his dealings with the Decedent's Husband as a beneficiary of the estate. Id. "Because of this fiduciary role, the [Executor was] required to disclose all material facts to [the Decedent's Husband] including the value of the estate, the value of the house, and the value of [the Decedent's Husband's] statutory share of the estate." Id. (citations omitted). The Executor has the burden of proving by a preponderance of the evidence that he provided the Decedent's Husband with the required information. Id. From the record, we find that the Executor did not fulfill his responsibilities as a fiduciary by disclosing all material facts to the Decedent's Husband, particularly the value of the Husband's elective share. Because the Executor did not inform the Husband of the value of his elective share and the Husband was not represented by counsel, we further find that the Husband did not knowingly waive his statutory right to an elective share of the estate by signing the document titled "Receipt and Waiver." Hence, the Probate Court did not err by allowing the Husband to go forward with his Petition for Elective Share after the Husband signed and delivered the "Receipt and Waiver" to the Executor acknowledging receipt of the benefits accorded him in the will and releasing the estate from any further liability to him.

However, the doctrine of election requires a person to either accept a benefit under a will and adopt the whole contents of the instrument, conforming to all its provisions, or renounce the will and exercise rights inconsistent with the testator's intent. Colvert v. Wood, 25 S.W. 963, 965 (Tenn. 1894). The doctrine of election applies to a surviving spouse because he or she has the right to either accept the benefits under the will or exercise his or her right to an elective share of the deceased spouse's estate. Thus, the surviving spouse must elect either to receive the elective share or the benefits under the will, but the surviving spouse cannot elect to receive both.

Once a person makes an election, the doctrine of equitable estoppel prevents that person from taking a position contrary to the election. The doctrine of equitable estoppel, when applied to probate cases, provides "that a man shall not take any beneficial interest in a will, and at the same time set up any right or claim of his own, even if otherwise legal and well founded, which shall defeat, or in any way prevent, the full effect and operation of every part of the will." Elmore v. Covington, 172 S.W.2d 809, 812 (Tenn. 1943) (quoting

12

Williams v. Williams, 83 Tenn. 438, 445 (1885)).  Equitable estoppel requires evidence of the following elements with respect to the party against whom estoppel is asserted:

(1)     Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) Intention, or at least expectation that such conduct shall be acted upon by the other party; (3) Knowledge, actual or constructive of the real facts.

Osborne v. Mountain Life Ins. Co., 130 S.W.3d 769, 774 (Tenn. 2004) (citing Callahan v. Town of Middleton, 292 S.W.2d 501, 508 (Tenn. 1954)).  With respect to the party who is asserting the doctrine, equitable estoppel requires evidence of the following elements:

(1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) Reliance upon the conduct of the party estopped; and (3) Action based thereon of such a character as to change his position prejudicially.

Id.

In this case, the Executor is asserting the doctrine of equitable estoppel against the Husband.  For equitable estoppel to apply, the Husband must have actual or construction knowledge of the "real facts."  As previously stated, the Executor did not fulfill his fiduciary responsibilities by providing the required information to the Decedent's Husband, particularly the value of the Husband's elective share.  Now, the Executor is claiming the doctrine of equitable estoppel.  As a result of the Executor's negligence in fulfilling his responsibilities, the Husband apparently did not understand or was confused about his right to accept the benefits under the will or to receive his elective share.  Thus, the doctrine of equitable estoppel does not apply because the Husband did not have actual or constructive knowledge of the facts.

Additionally, the doctrine of "unclean hands" applies to the Executor.  The doctrine of "unclean hands" has been explained as follows: "[A] complainant, who has been guilty of unconscientious conduct or bad faith, or has committed any wrong, in reference to a particular transaction, cannot have the aid of a Court of Equity in enforcing any alleged rights growing out of such transaction." Hogue v. Kroger Co., 213 Tenn. 365, 373 S.W.2d 714, 716 (1962) (quoting Gibson's Suits in Chancery § 51). "Once found to exist, the doctrine of unclean hands repels the unclean plaintiff at the steps of the Courthouse." Farmers & Merchants Bank v. Templeton, 646 S.W.2d 920, 924 (Tenn. Ct. App. 1983). Therefore, because the Executor failed to fulfill his fiduciary duties resulting in the Husband's confusion as to his rights, the doctrine of unclean hands prevents the Executor from claiming the doctrine of equitable estoppel.  Hence, the Husband may change his election.

To change his election, the Husband must ask that the whole transaction resulting from the election be set aside and return anything that he received as a result of his initial

election.  See Gore v. Howard, 30 S.W. 730, 732 (Tenn. 1895).  Therefore, the Husband must reimburse the rental income collected from the property and any value he received by living in the fourth apartment after the Decedent's death less any repairs made to the property located at 140 Tusculum Road or payments made regarding the property, including insurance, that the Husband made after the Decedent's death.  The Husband can reimburse the funds using his elective share.

When calculating the Husband's elective share, the amount of the reimbursement will be included in the net estate because the surviving spouse's elective share is calculated notwithstanding Tennessee Code Annotated section 31-2-103, and "the [s]urviving [s]pouse should share in any gains or losses experienced by the Decedent's estate prior to the distribution of [his or her] elective share."  Tenn. Code Ann. § 31-4-101(b); In re Estate of Jenkins, 8 S.W.3d 277, 286 (Tenn. Ct. App. 1999).  However, once the Husband's elective share is calculated, it shall be reduced by the reimbursement amount, and the reimbursement amount shall be distributed to the heirs of the property because "real property of a testate decedent vests immediately upon death in the beneficiaries of the will."  Tenn. Code Ann. § 31-2-103.  Hence, we find that the Probate Court did not err by allowing the Husband to go forward with his Petition for Elective Share but did err by not requiring the Husband to reimburse the heirs who own the property subject to the Husband's life estate**.**

III.     **Whether the Probate Court erred in classifying the $160,000.00 that the decedent transferred to two pay-on-death accounts with her two adult children as fraudulent conveyances.**

To address this claim, we must first determine how the Decedent held the property, i.e., as separate property, as a tenant in common, or as a tenant by the entirety.

Tenancy by the entirety is property ownership unique to married persons.  Property acquired during a marriage is presumed to be held by the entirety, unless proven otherwise.  Batson v. Batson, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988).  "The essential characteristic of tenancy by the entirety is that 'each spouse is seized of the whole or the entirety and not of a share, moiety, or divisible part.'"  Grahl v. Davis, 971 S.W.2d 373, 378 (Tenn. 1998) quoting Sloan v. Jones, 241 S.W.2d 506, 507 (Tenn. 1951).  "[O]nce a tenancy by the entirety is created, it can be terminated only when both convey, when one spouse dies and the survivor becomes owner of the whole, or when the survivorship is dissolved by divorce and the parties become tenants in common in the property."  White v. Watson, 571 S.W.2d 493, 495 (Tenn. Ct. App. 1978).

The Tennessee Supreme Court has expressly held that tenancy by the entirety with the right of survivorship may exist in certificates of deposit and bank accounts.  Grahl, 971 S.W.2d at 378.  Tennessee Code Annotated section 45-2-703(d)(1), which applies to all accounts opened after January 1, 1989, provides that "[w]hen opening a multiple-party deposit account, or amending an existing deposit account so as to create a multiple-party deposit account, each bank shall utilize account documents which enable the depositor to

designate ownership interest therein . . . ." Tennessee Code Annotated section 45-2-703(e)(4) provides that "[i]n the absence of any specific designation in accordance with subsection (d), property held under the title, tenancy by the entireties, carries a right of survivorship; property held under the title, joint tenancy, carries no right of survivorship unless a contrary intention is expressly stated." Therefore, if the account was created after January 1, 1989 and a specific designation was made in accordance with Tennessee Code Annotated section 45-2-703(d), the specific designation controls. If the account had no specific designation or was created before January 1, 1989, the Probate Court must determine how the bank account was held by the Decedent and her Husband, i.e. tenancy by the entirety, which is presumed, or tenants in common. Hence, this issue must be remanded to the Probate Court to ultimately determine how the bank account was held by the Decedent and her Husband.

If the Probate Court determines that the bank account was held as tenants by the entirety, the issue then becomes whether money withdrawn by one spouse from a bank account held by the entirety is still held as tenants by the entirety. The case law is unclear on this issue. In Sloan v. Jones, 241 S.W.2d 506, 508-09 (Tenn. 1951) (quoting Madden v. Gosztonyi Sav. & Trust Co., 331 Pa. 476, 200 A. 624, 630 (1938)), our Supreme Court quoted with approval the following passage:

> Where a deposit is made payable to either spouse, agency or authority exists by implication, and the husband or the wife may, from that authority, withdraw the entire account, but the money thus withdrawn is impressed with the entirety provision and that it is the property of both, and any one dealing with such specific property, as severalty, knowing it belongs to both, must submit to the consequences.

The Supreme Court of Tennessee also quoted this passage in Griffin v. Prince, 632 S.W.2d 532, 536 (Tenn. 1982).

In Mays v. Brighton Bank, 832 S.W.2d 347, 350-51 (Tenn. Ct. App. 1992), this Court held that "[f]unds withdrawn or otherwise diverted from the account by one of the tenants and reduced to that tenant's separate possession ceases to be a part of the estate by the entireties."

Our Supreme Court addressed the discrepancy between Sloan and Mays in a footnote in Grahl v. Davis stating that:

> The intermediate court in Mays characterized the legal status of property purchased with tenancy by the entirety funds as a question of first impression. That precise question was not at issue in Sloan and Griffin, so technically, the characterization is correct. The intermediate court decided the issue by rejecting the decision of the Pennsylvania Supreme Court, quoted with approval in Sloan and Griffin, and by adopting instead the position of the Arkansas courts that funds withdrawn by one spouse from a tenancy by the entirety account are not impressed with the entirety provision and can not be

15

recovered by the other spouse absent a showing of fraud. Mays appears to be inconsistent with this Court's prior decisions.

Grahl, 971 S.W.2d at 379 n.3. We find that this Court's prior decision in Mays is inconsistent with the Supreme Court's prior decision in Sloan, 241 S.W.2d at 508-09, that money withdrawn from a bank account held by husband and wife as tenants by the entirety is impressed with the entirety provision and that any one who receives the property knowing it is impressed with an entirety provision takes subject to the provision.

Therefore, if on remand the Probate Court determines that the bank account was held by the Decedent and her Husband as tenants by the entirety, then the $160,000 was impressed with the entirety provision. As stated above, "once a tenancy by the entirety is created, it can be terminated only when both convey, when one spouse dies and the survivor becomes owner of the whole, or when the survivorship is dissolved by divorce and the parties become tenants in common in the property." White v. Watson, 571 S.W.2d 493, 495 (Tenn. Ct. App. 1978). Hence, if the Probate Court determines that the Husband did not agree to the transfer of the $160,000 into two pay on death accounts for the benefit of the Decedent's children, then upon the Decedent's death, ownership of the $160,000 immediately vested to the Husband, not the Decedent's children. Sloan, 241 S.W.2d at 507.

If the Probate Court determines on remand that the account was not held as tenants by the entirety, Tennessee Code Annotated section 31-1-105 may apply. Section 31-1-105 defines a fraudulent transfer as:

> Any conveyance made fraudulently to children or others, with an intent to defeat the surviving spouse of the surviving spouse's distributive or elective share, is, at the election of the surviving spouse, includable in the decedent's net estate under § 31-4-101(b), and voidable to the extent the other assets in the decedent's net estate are insufficient to fund and pay the elective share amount payable to the surviving spouse under § 31-4-101(c).

For Tennessee Code Annotated section 31-1-105 to apply, courts must determine that the decedent intended to prevent the surviving spouse from receiving his or her elective share and that the transfer was fraudulent. McClure v. Stegall, 729 S.W.2d 263, 265 (Tenn. Ct. App. 1987); In re Estate of Gray, 729 S.W.2d 668, 672-73 (Tenn. Ct. App. 1987). In this case, the Probate Court specifically found that the Decedent intended to prevent her Husband from receiving his elective share of the property and that the Husband "established all seven factors necessary for proving a fraudulent conveyance . . . ."

On appeal, we must first determine whether the Probate Court erred in determining that the Decedent intended to prevent her Husband from receiving his elective share of the property. Prior to her death, the Decedent transferred $160,000 from a joint bank account with her Husband into two pay on death accounts that were payable to her children. At trial, the Husband testified that he did not know that the Decedent transferred the funds. Based on the Decedent's actions and the Husband's testimony, we find that the evidence does not preponderate against the Probate Court's finding that the Decedent intended to prevent her Husband from receiving his elective share of the funds.

16

Having determined that the Decedent intended to prevent her Husband from receiving his elective share, we must determine whether the transfer was fraudulent. In determining whether the transfer was fraudulent, the following factors must be considered:

> (1) whether the transfer was made with or without consideration; (2) the size of the transfer in relation to the [Decedent's] total estate; (3) the time between the transfer and the [Decedent's] death; (4) relations which existed between the husband and the wife at the time of the transfer; (5) the source from which the property came; (6) whether the transfer was illusory; and (7) whether the [surviving spouse] was adequately provided for in the will.

Finley v. Finley, 726 S.W.2d 923, 924 (Tenn. Ct. App. 1986).

The Executor claims that the evidence preponderates against the Probate Court's finding that the transfer was fraudulent because the funds came from property owned solely by the Decedent and her Husband "ratified and confirmed [the transfer] when he took the remaining $100,000.00" of the $260,000 balance and gave it to his children. Considering the seven factors listed above, we find that the evidence does not preponderate against the Probate Court's finding.

First, the transfer of the $160,000 was made without consideration. Second, the $160,000 is a large portion of the Decedent's estate. Third, the Decedent transferred the money approximately two months before her death. Fourth, the Decedent had disagreements with her Husband regarding the preparation of their wills in the months preceding her death.

Fifth, the source of the money was martial property. Prior to her marriage to her Husband, the Decedent owned five unimproved lots on Bart Drive, which she later sold. During her marriage to her Husband, the Decedent purchased duplexes on McLendon Court from the proceeds of the property on Bart Drive. The deed to the duplexes lists both the Decedent and her Husband as owners. As stated before, property acquired during a marriage by husband and wife is presumed to be held by the entirety, unless proven otherwise. Batson v. Batson, 769 S.W.2d at 858. "Separate property may become marital property when there has been a transmutation of the separateness." Barnhill v. Barnhill, 826 S.W.2d 443, 452 (Tenn. Ct. App. 1991).

The doctrine of transmutation was clearly defined in Batson, 769 S.W.2d at 858:

> [Transmutation] occurs when separate property is treated in such a way as to give evidence to an intention that it become marital property. One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy. This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate. This presumption is based also upon the provision in many marital property statutes that property acquired during the marriage is presumed marital. The presumption can be rebutted by evidence of

17

circumstances or communications clearly indicating an intent that the property remain separate.

Therefore, once the deed to the duplexes on McClendon Court was signed, listing the Decedent and her Husband as owners, the property transmutated into marital property creating a rebuttable presumption of a gift to the marital estate. The record contains no evidence that the Decedent did not intend for the property to be a gift. Later, the Decedent and her Husband sold the duplexes for $260,000 and deposited the money into a joint bank account. The $160,000 that the Decedent transferred to her children came out of the proceeds from the duplexes. Therefore, the source of the $160,000 dollars was martial property.

The sixth factor is whether the transfer was illusory. The Husband claimed in court that he did not know about the transfer of the $160,000. However, the Executor claims that the Husband knew about and agreed to the transfers of the $160,000 because he received $100,000 of the proceeds from the duplexes and gave the money to his children.

The seventh factor is whether the Husband was adequately provided for under the will. Pursuant to the will, the Decedent bequeathed to her Husband a life estate in the property located at 140 Tusculum Road so long as he maintained the property and used the property for his principal residence. The Decedent also bequeathed to her Husband the rental income from the three apartments located at 140 Tusculum Road to be used to "pay for all upkeep, maintenance, taxes, insurance, rental expenses and the remainder as retirement income until he moves away from [the property]." She further bequeathed to her Husband the depository accounts, certificates of deposit, her share of the motor home, and any automobiles and/or trucks that they purchased jointly. According to the Decedent and the Husband's tax returns, in 2001, the property at 140 Tusculum Road made a profit of $3,435 after the payment of all upkeep, maintenance, taxes, insurance and rental expenses. In 2002, the year the Decedent died, the property made a profit of $742. In 2003, the property had a loss of $1,370 and was in need of repairs. The Probate Court determined that the depository accounts were valued at $15,000, that no certificates of deposit passed pursuant to the will, that the Decedent's share of the motor home was valued at $9,000, and that the Decedent and her Husband did not own any automobiles jointly.

Factors one through five suggest that the conveyance was fraudulent, specifically the fact that the conveyance occurred two months prior to the Decedent's death, it was without consideration, the source of the money was from martial property and the Decedent and her Husband were having problems regarding their wills. As for factors six and seven, the evidence does not preponderate for or against a finding that the transfer was fraudulent. Therefore, if on remand the Probate Court finds that the $160,000 was not held as tenants by the entirety, we find that the evidence does not preponderate against the Probate Court's finding that the Decedent's conveyance of the $160,000 was fraudulent.

**IV. Whether the Probate Court erred in calculating the award of exempt property.**

On appeal, the Executor claims that the Probate Court erred by awarding as exempt property the value of tangible personal property, consisting of household furnishings and lawn equipment because the property was used primarily in the Decedent's trade or business, was used for investment purposes, or was owned jointly by the Decedent and her Husband. The Husband claims that the Probate Court did not err in calculating the award of exempt property.

Section 30-2-101 of the Tennessee Code Annotated provides:

(a)The surviving spouse of an intestate decedent, or a spouse who elects against a decedent's will, is entitled to receive from the decedent's estate the following exempt property having a fair-market value (in excess of any indebtedness and other amounts secured by any security interests in such property) which does not exceed fifty thousand dollars ($50,000):

(1) Tangible personal property normally located in, or used in or about, the principal residence of the decedent and not used primarily in a trade or business or for investment purposes, and

(2) A motor vehicle or vehicles not used primarily in a trade or business. If there is no surviving spouse, the decedent's unmarried minor children are entitled as tenants in common only to such exempt property as described in subdivision (a)(1). Rights to such exempt property are in addition to any benefit or share passing to the surviving spouse or unmarried minor children by intestate succession, elective share, homestead or year's support allowance.

The Executor claims that the Probate Court erred by concluding that the household furnishings, lawn equipment, and the motor home were exempt property. A husband and wife can own property separately, as tenants in common, or as tenants by the entirety. To determine whether the property is exempt, the Probate Court must determine whether the Decedent and her Husband owned the household furnishings, lawn equipment, and the motor home separately, as tenants in common, or as tenants by the entirety.

"It is well established in Tennessee . . . that personal property may be held by the entirety." White v. Watson, 571 S.W.2d at 495. Property acquired during a marriage by a husband and a wife is presumed to be held by the entirety, unless proven otherwise. Batson v. Batson, 769 S.W.2d at 858. "The essential characteristic of tenancy by the entirety is that 'each spouse is seized of the whole or the entirety and not of a share, moiety, or divisible part.'" Grahl v. Davis, 971 S.W.2d at 378 quoting Sloan v. Jones, 241 S.W.2d at 507. "Upon the death of one spouse, ownership of tenancy by the entirety property immediately vests in the survivor, and the laws of descent and distribution do not apply." Grahl, 971 S.W.2d at 378.

In this case, the Probate Court found that the household furnishings, lawn equipment, and the motor home were jointly owned by the Decedent and her Husband. The Probate Court treated the items of personal property as if they were held by the Decedent and her Husband as tenants in common and divided the value of the property in half. The Probate

19

Court then awarded the Decedent's half-interest in the property to the Husband as exempt property under Tennessee Code Annotated section 30-2-101(a)(1). The Probate Court stated that Tennessee Code Annotated section 30-2-101 "does not distinguish between tangible personal property that is solely owned by a decedent and tangible personal property that is jointly held by a decedent and a spouse."

The cited section, Tennessee Code Annotated section 30-2-101(a)(1), is a portion of the law of descent and distribution that gives the surviving spouse rights to certain exempt property that is part of the Decedent's estate, i.e., tangible personal property having a fair market value not exceeding $50,000.00 that is "normally located in, or used in or about, the principal residence of the decedent and not used primarily in a trade or business or for investment purposes." Tenn. Code Ann. § 30-2-101(a)(1). However, property held by a husband and a wife is presumed to be held by the entirety, and the laws of descent and distribution do not apply to property held as tenants by the entirety. Therefore, if the property was held by the Decedent and her Husband as tenants by the entirety, Tennessee Code Annotated section 30-2-101 does not apply.

The Probate Court never addressed whether the household furnishings, lawn equipment and motor home were held as tenants by the entirety. Hence, we remand this issue to the Probate Court to determine whether the household furnishings, lawn equipment and motor home were held by the Decedent and her Husband as tenants by the entirety. As to the household furnishings, the Executor claims and the Decedent's Husband admits that some of the household furnishings were owned solely by the Decedent. Therefore, on remand, the Probate Court must determine which household furnishings were held separately and which were held as tenants by the entirety.

Furthermore, once the Probate Court determines which items of tangible personal property, including the lawn equipment and household furnishings, were not held as tenants by the entirety, the Probate Court must determine whether that property was primarily used in a trade or business or for investment purposes. The Probate Court found that the lawn equipment and the household furnishings were exempt property and not used primarily in a trade or business. Clearly, the furniture in the three furnished apartments that the Decedent and her Husband rented to their tenants were used primarily in a trade or business. Therefore, we find that the evidence preponderates against the Probate Court's finding that the furniture in the three apartments that the Husband and the Decedent rented were exempt property.

The Probate Court also found that the lawn equipment was exempt property and not used primarily in a trade or business. The lawn equipment was used on the property located at 140 Tusculum Road where the Decedent and her Husband rented three apartments to their tenants. However, the Decedent and her Husband also lived in an apartment on the same property. As a result, the Probate Court had to determine whether the lawn equipment was used for the upkeep of the property primarily for the benefit of the renters or for the benefit of the Decedent and her Husband. The Executor cites no facts suggesting that the lawn equipment was used primarily for the benefit of the renters. The record contains no rental agreement that suggests the renters were not only renting the apartments but also renting the property. Furthermore, the record contains no evidence that the renters actually enjoyed and

20

used the land. As previously stated, the standard of review of a trial court's findings of fact is de novo, and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); Rawlings v. John Hancock Mut. Life Ins. Co., 78 S.W.3d at 296. Therefore, we find that the evidence does not preponderate against the Probate Court's finding that the lawn equipment was not used primarily in a trade or business.

**V.  Whether the Probate Court erred in calculating the award of year's support by deducting the award of exempt property from the award of year's support.**

On appeal, the Husband claims that the Probate Court erred in calculating the award of year's support by deducting the award of exempt property from the award of year's support.

Tennessee Code Annotated section 30-2-102(a) states that:

> In addition to the right to homestead, an elective share under title 31, chapter 4, and exempt property, the surviving spouse of an intestate, or a surviving spouse who elects to take against a decedent's will, is entitled to a reasonable allowance in money out of the estate for such surviving spouse's maintenance during the period of one (1) year after the death of the spouse, according to such surviving spouse's previous standard of living, taking into account the condition of the estate of the deceased spouse. The court may consider the totality of the circumstances in fixing the allowance authorized by this section, including assets which may have passed to the spouse outside probate.

Pursuant to the cited section of our Code, the Probate Court found that for the Husband to maintain his standard of living for one year, he would need $25,142.38. The Probate Court then deducted the award of exempt property from the award of year's support and arrived at a negative balance.

The Husband claims that the Probate Court erred by deducting the award of exempt property from the award of year's support. The year's support statute provides that an award of year's support is "[i]n addition to the right to homestead, and elective share under title 31, chapter 4, and exempt property . . . ." Tenn. Code Ann. § 30-2-102(a) (emphasis added). Thus, the award for year's support is clearly in addition to the award of exempt property. Therefore, the Probate Court erred when calculating the award for year's support by offsetting the year's support award with the award of exempt property.

The Court stated that it was "required to credit the amount of exempt property awarded to the surviving spouse against the allowance of year's support" pursuant to Tennessee Code Annotated section 30-2-102(c), which provides:

> The court may authorize the surviving spouse to receive any personal property of the estate in lieu of all or part of the money allowance authorized by this

21

section, and in any case where the court makes an allowance in money, the surviving spouse shall be entitled to select and receive any personal property of the estate, of a value not exceeding the allowance in money, which shall be in lieu of and which value shall be credited against the allowance.

Tennessee Code Annotated section 30-2-102(c) gives the Probate Court the option to allow the surviving spouse to select property of the estate in lieu of money. Presumably, the spouse would select non-exempt property. The statute does not state that the court can give exempt property in lieu of the award for year's support. Once the Probate Court allows the surviving spouse to select personal property in lieu of money, the right to choose which personal property is selected belongs to the surviving spouse, not the court. Therefore, we find that the Probate Court erred in calculating the award for year's support by offsetting the year's support award with the award of exempt property.

**VI.    Whether the Probate Court erred when determining the award for year's support.**

The Executor claims that the trial court erred when determining the award for year's support:

A.  by considering the Decedent's Social Security benefits when calculating the award for year's support.

B.  by not considering that the Husband "received over $1,200.00 a month in rent from the three apartments in the house" and "did not include the value to the Husband of continuing to live in the fourth apartment in the house at virtually no expense since the operational cost of the house was paid from the rents from the other three apartments . . . ."

C.  by not considering that the Husband "received over $200,000.00 in the jointly owned real estate, i.e., the two townhouses, consisting of two units each, located on Lots 9 and 10 on McLendon Court in Antioch, TN, that received the income from the said townhouses, which in 2002 was $24,600.00 with a profit of $14,330.00, and in 2003, the year after Mrs. Grass died, the Husband received $20,510.00 with a profit of $13,251.00 with no living expense attributable to his deceased spouse . . . ."

D.  by not considering that the 1.16 acre tract of land located on Bart Drive in Antioch, Tennessee, that the Husband "received by virtue of ownership with an undisputed value of $5,800.00 . . . ," and

E.  by not considering that "the estate had less than $15,000.00 in cash, and that as a matter of law, the year's support cannot be paid out of the real estate of the decedent."

Tennessee Code Annotated section 30-2-102(a) states that "a surviving spouse who elects to take against a decedent's will, is entitled to a reasonable allowance in money out of

the estate for such surviving spouse's maintenance during the period of one (1) year after the death of the spouse, according to such surviving spouse's previous standard of living, taking into account the condition of the estate of the deceased spouse." Thus, pursuant to this statute, the award for year's support is based on the Husband's standard of living prior to the Decedent's death. "[T]he words 'taking into account the condition of the estate' refer to a situation in which the estate is not sufficient to pay the full year's support without serious impairment or depletion . . . ." Phipps v. Watts, 781 S.W.2d 863, 867 (Tenn. Ct. App. 1989).[5]

Tennessee Code Annotated section 30-2-102(a) further states that "[t]he court *may* consider the totality of the circumstances in fixing the allowance authorized by this section, including assets which may have passed to the spouse outside probate." (emphasis added). Therefore, the decision to consider the totality of the circumstances is left to the discretion of the Probate Court, and the standard of review is the abuse of discretion standard.

In Eldridge v. Eldridge, 42 S.W.3d 82, 85 (Tenn.2001), our Supreme Court stated the following regarding the abuse of discretion standard of review:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." State v. Scott, 33 S.W.3d 746, 752 (Tenn. 2000); State v. Gilliland, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. Myint v. Allstate Ins. Co., 970 S.W.2d 920, 927 (Tenn. 1998).

A. The Executor claims that the trial court erred when determining the award for year's support by considering the Decedent's Social Security benefits when calculating the award for year's support.

Pursuant to 42 United States Code section 402(k)(2)(B), the surviving spouse must elect to receive either his or her own Social Security benefits or to receive the deceased spouse's Social Security benefits, but not both. The Executor claims that because the Decedent's Husband must elect to receive either his or the Decedent's Social Security benefits, but not both, then the Probate Court should only consider either the Decedent's benefits or the Husband's benefits when calculating the award for year's support. As stated

---

[5] While Phipps defines "taking into account the condition of the estate" as "a situation in which the estate is not sufficient to pay the full year's support without serious impairment or depletion . . . ," this Court has affirmed an award equal to the value of the Decedent's personal assets in the case of In re Estate of Gray, 729 S.W.2d 668, 673 (Tenn. Ct. App. 1987). Also, in the case of In re Estate of Truett, No. 02A01-9605-PB-00118, 1997 WL 160141, at *3 (Tenn. Ct. App. April 7, 1997), this Court affirmed an award of year's support in the amount of $21,500 and exempt property out of an estate worth $33,900, and in the case of In re Estate of Bass, No. 02A01-9504-CH-00094, 1996 WL 325582, at *2 (Tenn. Ct. App. June 11, 1996), this Court affirmed an award of year's support of $14,000 out of an estate containing $33,665.21.

above, the award for year's support is based on the surviving spouse's previous standard of living. Tenn. Code Ann. § 30-2-102(a). The surviving spouse's previous standard of living would surly have been dependent on both the surviving spouse's income and the deceased spouse's income, including Social Security benefits paid to both of them. Hence, we find that the Probate Court did not err by considering the Decedent's Social Security benefits when calculating the award for year's support.

A. The Executor claims that the trial court erred when determining the award for year's support by not considering that the Husband "received over $1,200.00 a month in rent from the three apartments in the house" and "did not include the value to the Husband of continuing to live in the fourth apartment in the house at virtually no expense since the operational cost of the house was paid from the rents from the other three apartments . . . ."

Pursuant to Tennessee Code Annotated section 30-2-102(a), the award for year's support is determined according to the "surviving spouse's previous standard of living, taking into account the condition of the estate of the deceased spouse." The rental income the Husband received from the three apartments and the value of the Husband living in the fourth apartment after the Decedent's death does not relate to the Husband's standard of living prior to the Decedent's death. Both of those facts occurred after the decedent's death. Therefore, when considering the surviving spouse's previous standard of living, the Court did not err by refusing to consider that the Husband received rent from three apartments and lived in a fourth apartment in the house located at 140 Tusculum Road in Antioch.

The Probate Court "*may* consider the totality of the circumstances in fixing" the award for year's support, such as the rents the Husband received from the three apartments and the value of the Husband living in the fourth apartment. Tenn. Code Ann. § 30-2-102(a) (emphasis added). However, the Probate Court's consideration of these circumstances is reviewed under the abuse of discretion standard. "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" Eldridge, 42 S.W.3d at 85(quoting State v. Shirley, 6 S.W.3d at 247). The Probate Court quite logically based its determination of the award for year's support on the prior tax returns filed by the Decedent and her Husband. Therefore, we find that the Probate Court did not abuse its discretion by refusing to consider the rents the Husband received from the three apartments and the value of the Husband living in the fourth apartment.

C. The Executor claims that the trial court erred when determining the award for year's support by not considering that the Husband "received over $200,000.00 in the jointly owned real estate, i.e., the two townhouses, consisting of two units each, located on Lots 9 and 10 on McLendon Court in Antioch, TN, that received the income from the said townhouses, which in 2002 was $24,600.00 with a profit of $14,330.00, and in 2003, the year after Mrs. Grass died, the Husband received $20,510.00 with a profit of $13,251.00 with no living expense attributable to his deceased spouse . . . ."

24

As previously stated, property acquired during a marriage is presumed to be held by the entirety, unless proven otherwise. Batson, 769 S.W.2d at 858. "The essential characteristic of tenancy by the entirety is that 'each spouse is seized of the whole or the entirety and not of a share, moiety, or divisible part.'" Grahl, 971 S.W.2d at 378 (quoting Sloan v. Jones, 241 S.W.2d at 507). "[O]nce a tenancy by the entirety is created, it can be terminated only when both convey, when one spouse dies and the survivor becomes owner of the whole, or when the survivorship is dissolved by divorce and the parties become tenants in common in the property." White, 571 S.W.2d at 495. Therefore, if the townhouses were located on McLendon Court were held by the Decedent and her Husband as tenants by the entirety, then upon the Decedent's death, the townhouses passed to the Husband outside of probate. The Probate Court "*may* consider the totality of the circumstances" when determining the award for year's support, "including assets which may have passed to the spouse outside probate." Tenn. Code Ann. § 30-2-102(a) (emphasis added).

However, the Probate Court did not address whether the Decedent and her Husband held the townhouses as tenants by the entirety. No evidence in the record suggests that the Decedent and her Husband intended to hold the townhouses in any other form of ownership. The record does not contain a copy of the deed, but the inheritance tax return lists the townhouses as jointly owned. Nevertheless, the Probate Court, stating that the townhouses was jointly owned, included one half (1/2) of the value of the townhouses in the Decedent's estate as if the Decedent and her Husband held the property as tenants in common. Therefore, because the Probate Court never addressed the issue of whether the Decedent and her Husband held the townhouses as tenants by the entirety, we remand this issue to the Probate Court to determine whether any evidence, such as a deed, overcomes the presumption that the townhouses located at McLendon Court was held by the Decedent and her Husband as tenants by the entirety.

Even though the Probate Court included one half (1/2) the value of the townhouses in the Decedent's estate, the Executor claims that the property passed to the Husband outside of probate. Assuming that the townhouses passed to the Husband outside of probate, the Probate Court may consider the townhouses, including all the rights attached to the townhouses, such as the right to rental income, when determining the award for year's support. Tenn. Code Ann. § 30-2-102(a). The decision to consider the townhouses is left to the Probate Court's discretion and the standard of review is the abuse of discretion standard. See Tenn. Code Ann. § 30-2-102(a). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" Eldridge, 42 S.W.3d at 85 (quoting State v. Shirley, 6 S.W.3d at 247). The Probate Court logically based its determination of the award for year's support on the income stated in the Decedent's and her Husband's prior joint tax returns. Therefore, we find that the Probate Court did not abuse its discretion by not considering the townhouses located on McLendon Court when determining the award of year's support.

D. The Executor claims that the trial court erred when determining the award for year's support by not considering the 1.16 acre tract of land located on Bart Drive in Antioch, Tennessee, that the Husband "received by virtue of ownership with an undisputed value of $5,800.00 . . . ."

25

The record is unclear as to whether the property passed to the Husband outside of probate. Assuming arguendo that the property passed to the Husband outside of probate, the Probate Court "*may* consider the totality of the circumstances in fixing" the award for year's support, "including assets which may have passed to the spouse outside probate." Tenn. Code Ann. § 30-2-102(a) (emphasis added). The Probate Court's consideration of those circumstances is reviewed under the abuse of discretion standard. "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" Eldridge, 42 S.W.3d at 85 (quoting State v. Shirley, 6 S.W.3d at 247). The Probate Court quite logically based its determination of the award for year's support on the prior tax returns filed by the Decedent and her Husband. Therefore, we find that the Probate Court did not abuse its discretion by refusing to consider the 1.16 acre tract of land located on Bart Drive in Antioch.

E. The Executor claims that the trial court erred when determining the award for years support by not considering that "the estate had less than $15,000.00 in cash, and that as a matter of law, the year's support cannot be paid out of the real estate of the decedent."

Because of this Court's findings in this opinion, this issue may be moot. Nevertheless, we will address this issue in case the Probate Court addresses it on remand. As stated above, the Probate Court must consider the "condition of the estate" when determining the award for year's support. The "condition of the estate" refers to the estate's ability to "pay the full year's support without serious impairment or depletion." Phipps, 781 S.W.2d at 863. The case law confirms that the award for year's support can only be satisfied from "the personal property and not the real property of the deceased." In re Estate of Gray, 729 S.W.2d 668, 672 (Tenn. Ct. App. 1987). However, the "condition of the estate" refers to the estate as a whole and not only the personal property. Therefore, when determining the award for year's support in view of the estate's ability to "pay the full year's support without serious impairment or depletion," the Probate Court should consider all the property of the estate, including the real property. Nevertheless, once the award for year's support is determined, only the personal property of the estate can be used to satisfy the award.

## VII. Whether the Probate Court erred in relying on evidence that was not presented at trial but was only attached to a "Memorandum in Support of Executor's Motion to Make Additional Findings and to Alter/Amend Order" to reduce the award for year's support.

The Husband claims that the Probate Court erred in relying on evidence that was not presented at trial but was only attached to a "Memorandum in Support of Executor's Motion to Make Additional Findings and to Alter/Amend Order" to reduce the award for year's support. Section 901(a) of the Tennessee Rules of Evidence provides:

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a

finding by the trier of fact that the matter in question is what its proponent claims.

Section 902 of the Tennessee Rules of Evidence provides:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required as to the following:

* * *

(11) Certified Records of Regularly Conducted Activity. - The original or a duplicate of a domestic record of regularly conducted activity that would be admissible under Rule 803(6) if accompanied by an affidavit of its custodian or other qualified person certifying that the record:

(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters;

(B) was kept in the course of the regularly conducted activity; and

(C) was made by the regularly conducted activity as a regular practice.

A party intending to offer a record into evidence under this paragraph must provide written notice of that intention to all adverse parties, and must make the record and declaration available for inspection sufficiently in advance of their offer into evidence to provide an adverse party with a fair opportunity to challenge them.

On October 19, 2004, the Probate Court entered an "Order on Petition for Elective Share, Year's Support, Exempt Property & Homestead" setting the award for year's support. On November 17, 2004, the Executor filed a "Motion to Make Additional Findings and to Alter or Amend Order." On November 18, 2004, the Executor filed a "Second Motion of Executor to Make Additional Findings and to Alter or Amend Order".

Subsequently, on February 4, 2005, the Executor filed a "Memorandum in Support of Executor's Motion to Make Additional Findings and to Alter/Amend Order," which had five attachments. One of the attachments was a group of bank statements from an account jointly held by the Decedent and her daughter. This was the first time that these bank statements were presented to the Probate Court. In the Memorandum, the Executor argued that, based on the bank statements, the Decedent directly deposited distributions from retirement funds in the amount of $21,076.62 into the joint account, and because the funds were directly deposited, the Decedent's Husband never had use of the funds. The Executor further argued that, because the Husband did not have use of the funds, the Probate Court should not consider the funds in calculating the award for year's support. On March 4, 2005, relying on the bank statements, the Probate Court entered an "Amended Order on Petition for Elective

27

Share, Year's Support, Exempt Property, and Homestead" reducing the award for year's support by $21,076.62.

The Husband now argues that the Probate Court erred by relying on the bank statements because they were not properly before the Probate Court. The record indicates that these bank statements were not properly authenticated pursuant to Tennessee Rule of Evidence 901. The Executor presented no extrinsic evidence to authenticate the statements nor did an employee of the bank or any witness testify as to the authenticity of the attachments. Also, the attachments were not self-authenticated pursuant to Tennessee Rule of Evidence 902 because the attachments were not "accompanied by an affidavit of its custodian or other qualified person." Therefore, the Probate Court erred by relying on unauthenticated and uncross-examined evidence to reduce the award for year's support. On remand this issue can be examined utilizing properly authenticated documents.

**VIII.     Whether the Husband is entitled to an exemption for Homestead.**

The Executor claims that the Husband is not entitled to an exemption for homestead because "he has elected against the provisions made for him in the Will and has therefor rejected the right to continue to reside in the real property owned in the Decedent's name alone." The Husband claims that he is entitled to an exemption for homestead pursuant to Tennessee Code Annotated sections 30-2-204 and 30-2-209. Tennessee Code Annotated section 26-2-301, provides:

> An individual, whether a head of family or not, shall be entitled to a homestead exemption upon real property which is owned by the individual and used by the individual or the individual's spouse or dependent, as a principal place of residence. The aggregate value of such homestead exemption shall not exceed five thousand dollars ($5,000); provided, individuals who jointly own and use real property as their principal place of residence shall be entitled to homestead exemptions, the aggregate value of which exemptions combined shall not exceed seven thousand five hundred dollars ($7,500), which shall be divided equally among them in the event the homestead exemptions are claimed in the same proceeding; provided, if only one (1) of the joint owners of real property used as their principal place of residence is involved in the proceeding wherein homestead exemption is claimed, then the individual's homestead exemption shall be five thousand dollars ($5,000). The homestead exemption shall not be subject to execution, attachment, or sale under legal proceedings during the life of the individual. Upon the death of an individual who is head of family, any such exemption shall inure to the benefit of the surviving spouse and their minor children for as long as the spouse or the minor children use such property as a principal place of residence.

> Tennessee Code Annotated section 30-2-204 states:

> (a) The surviving spouse may make application to any one of the courts named in § 30-2-202 in the county where the husband or wife, as the case may

28

be, last resided before death, for the appointment of two (2) freeholders or householders of the county, unconnected by affinity or consanguinity with those interested in the estate of the deceased, to allot and set apart the homestead to the applicant, in connection with the county surveyor, or his deputy.

(b) Any action to set aside the property designated in this section shall be brought within the time limits set by § 31-4-102.

Tennessee Code Annotated section 30-2-209 states:

If real estate is so situated that homestead cannot be set apart, as herein provided, then the realty shall be sold and five thousand dollars ($5,000) of the proceeds invested in real estate, under the direction of the court having jurisdiction to be held as homestead subject to the law governing homestead, or if the court deems it more desirable and practical, it may order the payment of five thousand dollars ($5,000) in cash or other personal property outright and in fee to the surviving spouse, if any, otherwise to the minor children, if any, in lieu of all other homestead rights in the realty of the deceased.

Pursuant to Tennessee Code Annotated section 26-2-301, the Husband is entitled to his homestead exemption in the property located at 140 Tusculum Road because the property was his principal place of residence immediately prior to the Decedent's death. When the Decedent died, the property became the property of her son, James McClendon under the terms of her will, with a life estate reserved to her Husband. The Husband exercised his right to his homestead exemption. Pursuant to Tennessee Code Annotated section 30-2-209, the Probate Court deemed it more desirable and practical to order the payment of five thousand dollars ($5,000) in cash in lieu of all other homestead rights in the realty of the deceased. The Husband is entitled to an award of homestead, and the Probate Court did not err in awarding the Decedent's Husband $5,000 in lieu of all of his homestead rights.

IX.     **Whether the Probate Court erred in calculating the surviving spouse's elective share.**

The Executor claims that the Probate Court erred by including the $160,000 transfer in the net estate as a fraudulent transfer and property that was jointly owned by the Decedent and her Husband. The Executor also claims that the Probate Court erred by not deducting from the net estate all assets includable in the Decedent's gross estate, which were transferred or deemed transferred to the surviving spouse. Finally, the Executor claims that the Probate Court erred by not deducting from the award for elective share the value the Husband received by living in the fourth apartment at 140 Tusculum Road, the amount the Husband received from the rents on the apartments and townhouses, the proceeds from the "garage sale" of the household furniture and furnishings, and the cost to the estate of the real property taxes, insurance, maintenance and upkeep of the property located at 140 Tusculum Road.

The Husband claims that the Probate Court erred in calculating his elective share by including the value of the real property located at McLendon Court in its computation of the Decedent's net estate because the property passed outside of probate. The Husband further claims that the Probate Court erred by including in the Decedent's gross estate the $100,000 that the Husband withdrew from a joint bank account prior to the Decedent's death.

Tennessee Code Annotated section 31-4-101 states:

(a)(1) The surviving spouse of an intestate decedent who elects against taking an intestate share, or a surviving spouse who elects against a decedent's will, has a right of election, unless limited by subsection (c), to take an elective-share amount equal to the value of the decedent's net estate as defined in subsection (b), determined by the length of time the surviving spouse and the decedent were married to each other, in
accordance with the following schedule:

| If the decedent and the Surviving spouse were married to each other: | The elective-share percentage is: |
|---|---|
| less than 3 years | 10% of the net estate |
| 3 years but less than 6 years | 20% of the net estate |
| 6 years but less than 9 years | 30% of the net estate |
| 9 years or more | 40% of the net estate |

(2) For purposes of determining the total number of years to be applied to the computation provided in this subsection, the number of years persons are married to the same person shall be combined. The years do not have to be consecutive, but may be separated by divorce. All years married shall be counted toward the total number of years for purposes of this section.

(b) The value of the net estate includes all of the decedent's real and personal property subject to disposition under the provisions of the decedent's will or the laws of intestate succession, reduced by the following: secured debts to the extent that secured creditors are entitled to realize on the applicable collateral, funeral and administration expenses, and award of exempt property, homestead allowance and year's support allowance.

(c) After the elective-share amount has been determined in accordance with the foregoing subsections (a) and (b), the amount payable to the surviving spouse by the estate shall be reduced by the value of all assets includable in the decedent's gross estate which were transferred, or deemed transferred, to the surviving spouse or which were for the benefit of the surviving spouse. For purposes hereof, the decedent's gross estate shall be determined by the court in the same manner as for inheritance tax purposes pursuant to T.C.A.

30

§§ 67- 8-301 et seq., except that the value of any life estate or trust for the lifetime benefit of the surviving spouse shall
be actuarially determined.

(d) The elective-share amount payable to the surviving spouse is exempt from the claims of the unsecured creditors of the decedent's estate.

To calculate the net estate of the Decedent, the total value of the real and personal property, which passed under the Decedent's will, must be reduced by the secured debts of the Decedent, to the extent that secured creditors are entitled to realize, funeral and administration expenses, the award of exempt property, the homestead allowance, and the year's support allowance. Tenn. Code Ann. § 31-4-101(b). To determine what property passed pursuant to the Decedent's will, the Probate Court should have first determined how the Decedent held the property, specifically, whether she held the property in her name alone, as a tenant in common, or as a tenant by the entirety. In this case, the Probate Court did not address whether the Decedent held any property as a tenant by the entirety. Therefore, this issue is remanded to the Probate Court to determine what property was held by the Decedent and her Husband as tenants by the entirety.

On remand, any property that the Probate Court determines that the Decedent and her Husband held as tenants by the entirety will not be included in the net estate because property held as tenants by the entirety passes outside of probate and is not subject to disposition under the Decedent's will or the laws of intestate succession. Grahl, 971 S.W.2d at 378; Tenn. Code Ann. § 31-4-101(b). However, the value of the Decedent's ownership interest in any property that the Probate Court determines that the Decedent and her Husband owned in any form other than tenants by the entirety or tenants in common with right of survivorship will be included in the net estate. Tenn. Code Ann. § 31-4-101(b).

After the net estate is determined, the value of the net estate is multiplied by a percentage based on the number of years the Decedent and her Husband were married. Tenn. Code Ann. § 31-4-101(a)(1). The Probate Court found that the Decedent and her Husband were married for over 27 years, and thus, the elective share shall be calculated at forty percent (40%) of the Decedent's net estate. Tenn. Code Ann. § 31-4-101(b).

Once the Probate Court determines the elective share, the amount payable to the surviving spouse by the estate shall be "reduced by the value of all assets includable in the decedent's gross estate which were transferred, or deemed transferred, to the surviving spouse." Tenn. Code Ann. § 31-4-101(c). "The decedent's gross estate shall be determined by the court in the same manner as for inheritance tax purposes pursuant to Tennessee Code Annotated sections 67-8-301, et seq., except that the value of any life estate or trust for the lifetime benefit of the surviving spouse shall be actuarially determined." Id.

Tennessee Code Annotated section 67-8-305(a) provides:

Whenever any property was held jointly by the decedent and one (1) or more persons as tenants by the entirety or otherwise, or was deposited in banks or other depositories or institutions in the joint names of the decedent and one

31

(1) or more other persons and was payable to one (1) or more, or to the survivor or survivors, so that, upon the death of the decedent, the survivor or survivors became entitled to the immediate possession, ownership or enjoyment of such property, the entire value of any such property shall be deemed to have been transferred from the decedent to the survivor or survivors, and such transfer shall be subject to the inheritance tax imposed by parts 3-5 of this chapter, except:

(1) Where the decedent and the survivor are husband and wife at the death of the decedent, there shall be deducted one half ( 1/2 ) of the value of the taxable transfer; . . . .

Therefore, the Husband's elective share shall be reduced by one half (1/2) of the value of any property that was held by the Decedent and her Husband as tenants by the entirety. Tenn. Code Ann. § 67-8-305(a).

As stated above, the Executor's first claim is that the Probate Court erred by including the $160,000 transfer in the net estate as a fraudulent transfer. If on remand, the Probate Court determines that the $160,000 and the "jointly owned property" were held by the Decedent and her Husband as tenants by the entirety, then, pursuant to Tennessee Code Annotated section 31-4-101(b), the $160,000 and the "jointly owned property" will not be included in the net estate, but one half of the $160,000 and the value of the "jointly owned property" shall be deducted from the Husband's elective share, pursuant to Tennessee Code Annotated section 67-8-305(a).

However, if the Probate Court does not determine that the $160,000 was held by the Decedent and her Husband as tenants by the entirety, then the $160,000 is a fraudulent conveyance because in a previous section, this Court affirmed the Probate Court's finding that the conveyance was fraudulent assuming that the $160,000 was not held as tenants by the entirety. Therefore, if the Probate Court determines that $160,000 was not held as tenants by the entirety, the $160,000 shall be included in the Decedent's net estate pursuant to Tennessee Code Annotated sections 31-4-101(b) and 31-1-105. Furthermore, if the Probate Court determines that the "jointly owned property" was not held by both the Decedent and her Husband as tenants by the entirety or joint tenants with right of survivorship, the value of the Decedent's ownership interest in the "jointly owned property" shall be included in the net estate.

The Executor further claims that the Probate Court erred by not deducting from the net estate all assets includable in the Decedent's gross estate, which were transferred or deemed transferred to the surviving spouse, including the four townhouses on McLendon Court, the motor home, the household furnishings and the lawn equipment. If the trial court determines on remand that the townhouses, motor home, household furnishings or lawn equipment were held by the Decedent and her Husband as tenants by the entirety, the Husband's elective share shall be reduced by one half the value of the property held as tenants by the entirety. However, if the Probate Court determines that the townhouses, motor home, household furnishings or lawn equipment were not held by the Decedent and her

Husband as tenants by the entirety, the property shall be included in the net estate in the calculation of the Husband's elective share.

Additionally, the Executor claims that the Probate Court erred by not deducting from the award for elective share the value the Husband received by living in the fourth apartment at 140 Tusculum Road. As stated in a previous section, for the Husband to elect against the will, the Husband must reimburse the rental income collected from the property located at 140 Tusculum Road and any value the Husband received by living in the fourth apartment after the Decedent's death less any repairs made to the property or payments made regarding the property, including insurance, that the Husband made after the Decedent's death. The Husband can reimburse the funds from his elective share. The issue is whether the reimbursement amount should be included in the calculation of the Husband's elective share. In the case styled In re Estate of Jenkins, 8 S.W.3d at 286, this Court held that "the [s]urviving [s]pouse should share in any gains or losses experienced by the Decedent's estate prior to the distribution of [his or her] elective share." Therefore, when calculating the Husband's elective share, the amount of the reimbursement shall be included in the net estate pursuant to Tennessee Code Annotated section 31-4-101(b). Furthermore, once the Husband's elective share is calculated, it shall be reduced by the reimbursement amount, and the reimbursement amount shall be distributed to the heirs of the property.

The Executor's next claim is that the Probate Court erred by not deducting from the award for elective share the rental income the Husband received from the townhouses. The Probate Court treated the townhouses as if they were jointly owned but did not address whether they were held by the Decedent and her Husband as tenants by the entirety. As previously stated, the Probate Court must determine on remand whether the presumption that property acquired during marriage is held as tenants by the entirety is overcome. If the Probate Court determines that the townhouses were held by the Decedent and her Husband as tenants by the entirety, the rental income from the townhouses shall not be included in the calculation of the Husband's elective share because the townhouses passed to the Husband outside of probate and were not subject to disposition under the Decedent's will or the laws of intestate succession. Grahl, 971 S.W.2d at 378; Tenn. Code Ann. § 31-4-101(b).

If the Court determines that the townhouses were held in some other form of ownership, such as tenants in common or in the Decedent's name alone, and are subject to disposition under the Decedent's will or the laws of intestate succession, the Decedent's share of the rents, which could be all of the rents or part of the rents depending on the form of ownership in which the Decedent held the property, shall be included in the net estate when calculating the Husband's elective share because "the [s]urviving [s]pouse should share in any gains or losses experienced by the Decedent's estate prior to the distribution of [his or her] elective share." In re Estate of Jenkins, 8 S.W.3d at 286. Once the elective share is calculated, the Husband shall reimburse the heirs of the townhouses their share of the rents from his elective share.

The Executor's next claim is that the Probate Court erred by not deducting from the award for elective share the proceeds from the "garage sale" of the household furniture and furnishings. The Probate Court treated the household furniture and furnishings as if they were jointly owned but did not address whether they were held by the Decedent and her

33

Husband as tenants by the entirety. As previously stated, the Probate Court must determine on remand whether the presumption that property acquired during marriage is held as tenants by the entirety is overcome. The proceeds from the sale of any household furniture or furnishings that were held by the Decedent and her Husband as tenants by the entirety shall not be included in the calculation of the Husband's elective share because the townhouses, furniture and furnishings passed to the Husband outside of probate and are not subject to disposition under the Decedent's will or the laws of instate succession. Grahl, 971 S.W.2d at 378; Tenn. Code Ann. § 31-4-101(b). However, one half of the value of the furniture at the time of the Decedent's death shall be deducted from the Husband's elective share. Tenn. Code Ann. § 31-4-101(c). The Decedent's share of the proceeds from the sale of any furniture or furnishings that were held in some other form of ownership, such as tenants in common or in the Decedent's name alone, shall be included in the net estate when calculating the Husband's elective share. Tenn. Code Ann. § 31-4-101(b). Once the elective share is calculated, the Husband shall reimburse the estate from his elective share the Decedent's share of the proceeds from the sale of the household furniture and furnishings.

The Executor's next claim is that the Probate Court erred by not deducting from the award for elective share the cost to the estate of the real property taxes, insurance, maintenance and upkeep of the property located at 140 Tusculum Road. As previously stated, "the [s]urviving [s]pouse should share in any gains or losses experienced by the Decedent's estate prior to the distribution of [his or her] elective share." In re Estate of Jenkins, 8 S.W.3d at 286. Therefore, when calculating the Husband's elective share, the Decedent's net estate shall be reduced by any losses the estate incurred due to the payment of the real property taxes, insurance, maintenance and upkeep of the property. The record is unclear as to whether the Probate Court reduced the Decedent's net estate by any losses the estate incurred.

The Husband claims that the Probate Court erred in calculating the Husband's elective share by including the value of the real property located at McLendon Court in its computation of the Decedent's net estate because the property passed outside of probate. Tennessee Code Annotated section 31-4-101(b) provides that "[t]he value of the net estate includes all of the decedent's real and personal property subject to disposition under the provisions of the decedent's will or the laws of intestate succession . . . ." As stated in a previous section, we remanded the issue as to whether the property was located at McLendon Court was held by the Decedent and her Husband as tenants by the entirety. If the Probate Court determines that the property was held as tenants by the entirety, the value of the property shall not be included in the Decedent's net estate for purposes of calculating the Husband's elective share, but one-half of the value of the property shall be deducted from the Husband's elective share pursuant to Tennessee Code Annotated sections 31-4-101(c) and 67-8-305(a). Grahl, 971 S.W.2d at 378; Tenn. Code Ann. § 31-4-101(b). If the Probate Court determines that the property did not pass outside of probate, the entire value of the Decedent's share of the property shall be included in the Decedent's net estate.

The Husband further claims that the Probate Court erred by including in the Decedent's gross estate the $100,000 that the Husband withdrew from a joint bank account prior to the Decedent's death. Tennessee Code Annotated section 31-4-101(c) provides that the decedent's gross estate shall be determined by the court in the same manner as for

inheritance tax purposes pursuant to T.C.A. §§ 67- 8-301 et seq. . . . ." As quoted above, Tennessee Code Annotated section 67-8-305(a) only addresses property that "upon the death of the decedent, the survivor or survivors became entitled to the immediate possession, ownership or enjoyment of such property . . . ." In this case, the Husband removed the money from the joint bank account prior to the Decedent's death. The Husband then gave the money to his children. Arguably, prior to the Decedent's death, the Husband no longer was entitled to possession, ownership or enjoyment of the money, and therefore, the $100,000 should not be included in the Decedent's gross estate.

However, if on remand the Probate Court determines that the joint bank account was held as tenants by the entirety by the Decedent and her Husband, then the $100,000 was impressed with the entirety provision when the Husband withdrew it. To transfer money that is held as tenants by the entirety, both spouses must agree. The Probate Court stated that the money was transferred to the Husband "for his own benefit," but did not state whether the Decedent agreed to the transfer. As stated above, money withdrawn from a bank account held by a husband and wife as tenants by the entirety is impressed with the entirety provision and that anyone who receives the property knowing it is impressed with an entirety provision takes subject to the provision. Sloan, 241 S.W.2d at 508-09. Therefore, if the Decedent did not agree to the transfer, the $100,000 withdrawn by the Husband was impressed with the entirety provisions, and if the Husband's children knew that the property was held by the Decedent and her Husband as tenants by the entirety, then they take the money subject to the entirety provision. Hence, we remand this issue to determine whether the joint bank account was held by the Decedent and her Husband as tenants by the entirety, whether the Decedent agreed to the transfer of the $100,000 to the Husband's children, and whether the Husband's children knew that the Decedent and her Husband held the property as tenants by the entirety.

X.      **Whether the Probate Court erred in ordering the sale of real property located at 140 Tusculum Road, Antioch, Tennessee, to satisfy the Husband's elective share when the Husband did not properly serve process.**

The Executor claims that the Probate Court erred in ordering the sale of real property located at 140 Tusculum Road to satisfy the Husband's elective share because the Husband did not properly serve process to Dianne McLendon.

Rule 4A of the Tennessee Rules of Civil Procedure, which governs service upon individuals in foreign countries, allows service to be effectuated by "any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served" as long as service of process by mail is not prohibited by the law of the foreign country. In this case, the Husband, not the clerk of the court, mailed a copy of the Petition to Compel Sale of Real Estate to Dianne McLendon, who lived in Canada at that time. Therefore, the Husband did not properly serve Dianne McLendon.

Additionally, the Husband's counsel argues in his brief that Ms. McLendon was properly served because he filed the Petition to Compel pursuant to Tennessee Code Annotated section 30-2-402. Tennessee Code Annotated section 30-2-402 requires that "[t]he surviving spouse, heirs, devisees, encumbrancers, and others interested in the realty,

excepting creditors, shall be impleaded." The Husband's counsel further argues that "James E. McLendon, both as Executor and individually, and Dianne McLendon have been made parties to the lawsuit. They are listed as 'Respondents' on the style of the lawsuit." Being listed as "Respondents" in the style of a lawsuit does not make any person a party to a lawsuit. To implead a defendant, thereby making him or her a party to the lawsuit, service of process must be issued and served pursuant to Rule 4 of the Tennessee Rules of Civil Procedure. Ms. McLendon was not properly served pursuant to Rule 4 of the Tennessee Rules of Civil Procedure. Therefore, the Probate Court erred in ordering the sale of real property located at 140 Tusculum Road, but that error can be corrected on remand.

## Conclusion

In conclusion, we find that the Probate Court had jurisdiction to extend the statute of limitations and that the Agreed Order authorized by representatives of both parties was effective to extend the statute of limitations. We also find that the Probate Court did not err by allowing the Husband to elect against the will. Additionally, we find that the Probate Court did not err in awarding the homestead exemption, but did err in calculating the award for year's support, exempt property, and the Husband's elective share. Finally, we find that the Probate Court erred by ordering the sale of real property located at 140 Tusculum Road until process is properly served.

Therefore, the judgment is affirmed in part and reversed in part, and this matter is remanded to the Probate Court for further proceedings consistent with this opinion. Costs on appeal are assessed against the Estate, for which execution may issue if necessary.

_____
Jerry Scott, Senior Judge